Larry PORTER, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 49S00–9802–CR–79.

Supreme Court of Indiana.

Sept. 8, 1999.

Steven B. Lazinsky, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Larry Porter robbed and shot to death a man who was playing basketball in a public park. At the same time, another man robbed at gunpoint two other players. A jury found Defendant guilty of the murder of the first victim and also of conspiracy to commit robbery and of a being an accomplice in the robbery of the other two victims. In this appeal, Defendant does not dispute his conviction for murder, but argues—and we agree—that there was insufficient evidence to support the convictions for conspiracy and accomplice robbery.

We have jurisdiction over this direct appeal because the longest single sentence exceeds fifty years. Ind. Const. art VII, § 4; Ind. Appellate Rule 4(A)(7).

*Background*

On the evening of July 31, 1996, Kenneth Mason was playing basketball at Watkins Park in Indianapolis. About ten to fifteen other people, including Anthony Robinson and Mark Garret, were present as either players or spectators. While Mason was playing, Defendant walked onto the basketball court, shot Mason, kicked him, and took a gold chain from Mason's neck. Mason later died of the gunshot wound. At approximately the same time, at the opposite end of the court, another man robbed Robinson and Garrett at gunpoint. Eyewitnesses later

identified this man as Dejuan Emerson. For purposes of this opinion only, we assume this man to have been Emerson.

Police apprehended Defendant on August 5, 1996, while he was riding in an automobile with Jerry Emerson, the brother of Dejuan Emerson. At a jury trial conducted in December, 1997, Defendant was convicted of Murder,[1] Robbery,[2] and Carrying a Handgun without a License[3] for killing Mason and taking his necklace. He was also convicted of Conspiracy to Commit Robbery[4] and two counts of Robbery as an accomplice of Emerson in the robberies of Robinson and Garrett. Finding aggravating circumstances to justify imposing the maximum sentences, with several to run consecutively, Defendant was sentenced to the Department of Correction for a total of 155 years.

## Discussion

### I

The State's theory of this case was that Defendant and Dejuan Emerson agreed to go to the park armed with handguns and rob the basketball players there of their gold jewelry. As such, the State contended that Defendant, in addition to being guilty of killing and robbing Mason, was also guilty of conspiracy to commit robbery and of a being an accomplice in Emerson's robbery of Robinson and Garrett. Defendant does not contest his convictions for killing and robbing Mason. But he does contend that there was insufficient evidence to support his convictions as a co-conspirator and an accomplice in the robberies of the other two victims. In doing so, Defendant argues that there was no evidence, either direct or circumstantial, to establish that at the time of the robberies, he was acting in concert with Emerson. In addition, he argues that there were no facts presented from which one could infer an agreement establishing a conspiracy to commit robbery.

■■■ In reviewing a claim that the evidence is insufficient to support a conviction, we neither re-weigh the evidence nor judge the credibility of the witnesses. Rather, we look only to the evidence most favorable to the trial court's judgment and to the reasonable inferences to be drawn from that evidence. If there is substantial evidence of probative value to support the conclusion of the trier of fact, that conclusion will not be disturbed. *Wright v. State*, 690 N.E.2d 1098, 1106 (Ind.1997); *Vance v. State*, 640 N.E.2d 51, 57 (Ind.1994); *Loyd v. State*, 272 Ind. 404, 407, 398 N.E.2d 1260, 1264 (1980).

■■■ There was no evidence produced at trial that Defendant himself robbed either Robinson or Garrett. But Defendant could still be liable for those robberies if he was Emerson's accomplice. Under the theory of accomplice liability, "an accomplice is criminally responsible for all acts committed by a confederate which are a probable and natural consequence" of their concerted action. *McGee v. State*, 699 N.E.2d 264, 265 (Ind. 1998). It is not necessary that the evidence show that the accomplice personally participated in the commission of each element of the offenses. *Id.* Rather, evidence that the accomplice acted in concert with those who physically committed the elements of the crime is sufficient to support a conviction. *Fox v. State*, 497 N.E.2d 221, 227–28 (Ind. 1986). While mere presence at the scene or acquiescence in the crime is not sufficient to establish accomplice liability, presence at the scene may be considered along with "the defendant's relation to or companionship with the one engaged in the crime and the defendant's actions before, during and after the crime." *Hodge v. State*, 688 N.E.2d 1246, 1248 (Ind.1997).

■■■ To prove conspiracy, the State was required to establish that Defendant had the intent to commit robbery, agreed with another person to commit that robbery, and that some overt act was performed in furtherance of that agreement. Ind.Code § 35–41–5–2 (1993). The State was not required to prove the existence of a formal express agreement. *Vance*, 640 N.E.2d at 57. "It is sufficient if the minds of the parties meet

---

**1.** Ind.Code § 35–42–1–1 (1993).

**2.** *Id.* § 35–42–5–1.

**3.** *Id.* § 35–47–2–1.

**4.** *Id.* §§ 35–41–5–2; 35–42–5–1.

understandingly to bring about an intelligent and deliberate agreement to commit the offense." *Williams v. State,* 274 Ind. 94, 96, 409 N.E.2d 571, 573 (1980). As such, the agreement may be proved by either direct or circumstantial evidence. *Wright,* 690 N.E.2d at 1107. However, mere association with the co-conspirator, standing alone, is insufficient to support a conviction for conspiracy. *Id.*

■ In this case, the State's evidence showed that at the time Defendant shot and robbed the victim, Kenneth Mason, Robinson and Garrett were being robbed nearby by Emerson. In addition, the State presented evidence that Emerson and Defendant knew one another. Standing alone, we find this evidence insufficient to support Defendant's convictions for conspiracy to commit robbery and accomplice robbery.

The full extent of the State's argument on appeal that the evidence was sufficient is as follows:

> The evidence supports Defendant's convictions. Four witnesses testified that Defendant and Emerson came to the same basketball court at the same time, with handguns (R. 255–57, 278–80, 319–22, 343–44). Defendant shot Kenneth Mason, kicked him in the head as he lay bleeding on the ground, and pulled a gold necklace from Mason's neck. (R. 255–57, 269, 278–79, 319–20, 343–44). At the same time, Emerson robbed Anthony Robinson, and it can be inferred that Emerson also robbed Mark Garrett (R. 256–59, 321–322). Furthermore, Defendant admitted knowing Emerson (R. 483).

Br. of Appellee at 4.

The State's argument hinges on the second sentence of this paragraph: the testimony of four witnesses that Defendant and Emerson came to the basketball court at the same time. Even if we assume that their coming to the court *at the same time* (as opposed to coming to the court *together* ) is sufficient to establish that they were acting in concert, we find that the record does not support the statement that they came to the court at the same time.

The first three of the four witnesses referred to in the State's brief—Garrett, De-juan Harrison, and Robinson—all testified that Defendant and Emerson were *at* the basketball court at the same time but none of them testified that Defendant and Emerson *came* to the basketball court at the same time. The fourth witness, Corey Culpepper, testified that he only saw Defendant: "I didn't see no other person there with a gun." (R. at 344).

Only Robinson was questioned as to whether Defendant and Emerson acted in concert. His testimony on cross-examination (defense counsel questioning) was as follows:

Q: Did this person [Emerson] appear to communicate with this person over here [Defendant]? Did he yell at him?

A: No, he didn't.

Q: Did you see the two of them come up together?

A: Nah—like I said, I've never seen them before in my life.

Q: Well, did they appear to have come together?

A: I couldn't tell you.

Q: Okay. Did they make gestures to one another while each was doing something?

A: No, they didn't.

Q: Uh—did you happen to notice either one of them share things with each other. In other words, somebody took something from you and your testimony is that this guy over here was taking something over here. Did you ever, the entire evening, see them come together again?

A: No, I didn't.

Q: Did you see them leave together?

A: No, I didn't.

Q: And no communication whatsoever?

A: Nope.

(R. at 331). On redirect, the prosecutor and Robinson engaged in the following colloquy:

Q: It's your testimony, Mr. Robinson, that you don't know whether or not these two men, one of whom you've identified as Larry Porter and the other one that you identified a photo of, in State's Exhibit Thirteen, you

don't know if they came together or were acting together. Is that right?

A: No, I don't.

Q: All's you know is that they were on the basketball court at the same time, and one was robbing you and the other was robbing Kenneth Mason. And one was taking your gold necklace, and the other one was taking Kenneth Mason's gold necklace.

A: Yes, sir.

Q: All at around the same time.

A: Yes, sir.

Q. Both of them had guns?

A: Yes, sir.

(R. at 334–35).

The State does not cite, and our inspection of the record has not found, any additional evidence linking Defendant to Emerson or to the robberies of Robinson and Garrett: no evidence that Defendant and Emerson shared or split any of the property stolen by Emerson; no evidence that they were together at anytime before, during or after the incident; no evidence that they arrived at, or left, the scene together; and no evidence that the two spoke, gestured or communicated with one another at any point before, during or after the incident. In fact, we have found no evidence that the two were even aware of one another's presence at the time the incidents occurred.

Lacking any such evidence, we find that the State did not present sufficient evidence from which a reasonable trier of fact could find that at the time of the robberies, Defendant and Emerson acted in concert. Nor is such evidence sufficient to support an inference of the agreement necessary to establish a conspiracy to commit robbery.

## II

Defendant contends that his sentence is manifestly unreasonable because the trial court improperly identified aggravating circumstances in selecting his sentence. Defendant argues that because the aggravating circumstances were not specifically set forth in the sentencing order, they were inadequate to support the maximum and consecutive sentences imposed by the trial court.

In general, the legislature has prescribed standard sentences for each crime, allowing the sentencing court limited discretion to enhance each sentence to reflect aggravating circumstances or reduce the sentence to reflect mitigating circumstances. The legislature also permits sentences to be imposed consecutively if aggravating circumstances warrant. *Morgan v. State*, 675 N.E.2d 1067, 1073 (Ind.1996) (*citing Reaves v. State*, 586 N.E.2d 847 (Ind.1992)); *see* Ind.Code § 35–38–1–7.1(b) (Supp.1996) (a court may consider aggravating circumstances in determining whether to impose consecutive sentences).

When the trial court imposes a sentence other than the presumptive sentence, or imposes consecutive sentences where not required to do so by statute, this Court will examine the record to insure that the court explained its reasons for selecting the sentence it imposed. *Archer v. State*, 689 N.E.2d 678, 683 (Ind.1997) (*citing Hammons v. State*, 493 N.E.2d 1250, 1254 (Ind.1986)). The trial court's statement of reasons must include the following components: (1) identification of all significant aggravating and mitigating circumstances; (2) the specific facts and reasons that led the court to find the existence of each such circumstance; and (3) an articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determining the sentence. *Mitchem v. State*, 685 N.E.2d 671, 678 (Ind.1997) (*citing Jones v. State*, 675 N.E.2d 1084, 1086 (Ind.1996)).

Here, the trial court specifically cited the presentence report in identifying several aggravating factors used in sentencing. (R. at 581). These factors included Defendant's lengthy criminal history—which included five prior felony convictions—as well as a previous violation of the conditions of his parole. (R. at 581). The trial court relied upon properly supported aggravating circumstances to enhance Defendant's sentence. Accordingly, we cannot conclude that the trial court abused its discretion in imposing Defendant's sentence for the remaining

counts of murder, robbery and carrying a handgun without a license.[5]

### Conclusion

Defendant's convictions and sentences for murder, robbery and carrying a handgun without a license are affirmed. We vacate Defendant's convictions and sentences for accomplice robbery and conspiracy to commit robbery.

SHEPARD, C.J., and DICKSON, SELBY, and BOEHM, JJ., concur.

---

5. Given our conclusion in Part I, *supra*, we find it unnecessary to express an opinion as to the trial court's use of aggravators in selecting sen-
tences for the accomplice robbery and conspiracy counts.