Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Sep 10 2014, 9:09 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL G. MOORE**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES MCDUFFY, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1401-CR-13 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa Borges, Judge
Cause No. 49G04-1211-MR-80843

**September 10, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

James McDuffy ("McDuffy") was convicted in Marion Superior Court of murder, Class A felony kidnapping, Class A felony attempted murder, Class A felony robbery, and Class A felony conspiracy to commit kidnapping, and was sentenced to an aggregate term of 185 years. McDuffy appeals and presents three issues for our review, which we restate as:

I. Whether the State presented evidence sufficient to convict McDuffy of attempted murder;

II. Whether the State presented evidence sufficient to convict McDuffy of murder; and

III. Whether the State presented evidence sufficient to support McDuffy's habitual offender enhancement.

We find no error with respect to these issues and therefore affirm the challenged convictions and enhancement. However, *sua sponte*, we vacate McDuffy's conspiracy to commit kidnapping conviction on double jeopardy grounds and remand with instructions to vacate the sentence thereon.

**Facts and Procedural History**

In mid-November 2012, a group of associates of a recently-murdered Indianapolis rapper, Brandon "Bango" McMitchell, contacted Thomas Keys, a local music producer, and requested that he compose a musical track to honor McMitchell's memory. After agreeing to compose the piece, Keys asked his cousin, Marvin Finney, to help him edit the music for the track. On November 15, 2012, Finney and Keys drove to a residence located on East 46th Street, which was used as a recording studio, ostensibly to pick up music and payment from the people who had requested the tribute track. Soon after they

entered the house, Finney and Keys encountered Dontee Robinson, a person Finney knew as "D-Rob." The three of them entered a room containing soundboards, computers, and chairs and were shortly thereafter joined by McDuffy. After the conversation turned to the subject of McMitchell's death, McDuffy asked Keys if he had information about who had killed McMitchell. Keys answered, "I know probably just as much as you all know." Tr. p. 123. Robinson pressed Keys further, telling him "I think you know something. You need to tell us who killed Bango." Id. Keys again denied having any knowledge regarding the identity of McMitchell's killer.

McDuffy then turned to Finney, who was texting his girlfriend, and demanded to see Finney's cell phone to determine who he was texting. After McDuffy and Robinson both displayed firearms and seized Finney and Keys's cash, keys, and laptops, Finney became frightened and tried to leave the studio. A third man was standing in the back of the room, and McDuffy ordered that person to stop Finney. The man pointed a handgun at Finney and told him to sit down. McDuffy instructed the man to bind Finney and Keys with zip ties. Dominique Hamler, known to Finney as "Scooter," then entered the room carrying a rifle. He pointed the rifle at Finney and Keys and demanded angrily, "who killed Bango?" and "who killed my brother?" Tr. p. 136. The group began to punch and kick Finney and Keys around their upper bodies and heads. Soon, another man, Nathaniel Armstrong, entered the room, threatened Finney and Keys, then used a box cutter to slash Keys on his leg, causing Keys to cry out in pain. Yet another man entered and instructed the others to "get the gloves and get this done." Tr. p. 151. Someone put toilet paper inside Keys's mouth and duct tape over his mouth. Then, everyone in the

group left the room except for McDuffy and the third person. McDuffy again demanded to know who had killed McMitchell, told Finney and Keys "you are all going to die," and struck Finney on the head with his gun. Tr. p. 153.

Eventually, the other members of the group returned to the room wearing work gloves. Someone said, "drown them, electrocute them," and "burn them alive." Tr. p. 156. McDuffy suggested that they release Finney and Keys, to which another person replied "You going to let them kill your cousin and get away with it?" Tr. p. 157. The group then placed zip ties tightly around Finney and Keys's necks, nearly choking them, and duct tape over their faces and bodies. Because Finney's eyes were mostly covered by the duct tape, his sight was partially obstructed. The group again left the room, but a person soon appeared in the doorway, approached within eight or nine feet of Finney and Keys, and began shooting. The bullets struck Finney on his arms. The shooter left after about thirty seconds. Finney lifted himself from the ground and pulled the duct tape from his face and body. He tried to rouse Keys, but Keys was unresponsive. Finney fled from the house and to a nearby CVS pharmacy, where bystanders called the police. Police officers and medics responded to the CVS, and after speaking with Finney, entered the nearby recording studio where they discovered Keys deceased on the floor, his face and head covered with duct tape and his hands and ankles bound with zip ties.

On November 29, 2012, the State charged McDuffy with murder, felony murder, Class A felony attempted murder, Class A felony kidnapping, Class A felony robbery, Class B felony criminal confinement, Class A felony conspiracy to commit kidnapping,

4

and Class B felony conspiracy to commit criminal confinement. The State filed its notice of habitual offender enhancement on January 29, 2013.

A jury trial was held from October 21, 2013 to October 24, 2013. The jury found McDuffy guilty on all counts. McDuffy waived his right to a jury trial for the habitual offender enhancement. At the bench trial on McDuffy's habitual offender enhancement the same day as the jury trial, the State presented evidence that McDuffy had previous felony convictions for Class D felony theft and Class C felony carrying a handgun without a license. The trial court found McDuffy to be an habitual offender.

McDuffy's sentencing hearing was held on December 13, 2013. The trial court ordered McDuffy to serve an aggregate sentence of 185 years: ninety-five years for his murder conviction, forty years for the Class A felony kidnapping conviction, fifty years for the Class A felony attempted murder conviction, six years for the Class A felony robbery conviction,[1] and twenty years for the Class A felony conspiracy to commit kidnapping conviction. McDuffy received an additional thirty years for being an habitual offender. The court ordered that the sentences for the murder, kidnapping, and attempted murder convictions be served consecutively and the sentences for the robbery and conspiracy to commit kidnapping convictions be served concurrently to the kidnapping sentence. The trial court vacated McDuffy's felony murder conviction, criminal confinement conviction, and conspiracy to commit criminal confinement conviction.

McDuffy now appeals.

---

[1] The trial court reduced McDuffy's Class A felony robbery conviction to Class C felony.

## I. Accomplice to Attempted Murder

McDuffy first contends that the evidence presented by the State is insufficient to support his attempted murder conviction as either the shooter or an accomplice. He argues that the State failed to prove that he was inside the home at the time Finney was shot and emphasizes that Finney was unable to identify the person who shot at him and Keys.

When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. Bailey v. State, 979 N.E.2d 133, 135 (Ind. 2012). The evidence—even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction. Id. "[W]e affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." Id.

To convict a defendant of the crime of attempted murder, the State has the burden of proving that the defendant had the specific intent to kill. It is not enough that a defendant act "knowingly or intentionally." Spradlin v. State, 569 N.E.2d 948, 950-51 (Ind. 1991). In Bethel v. State, 730 N.E.2d 1242, 1246 (Ind. 2000), our supreme court established a similar requirement where a case involves the issue of accomplice liability:

> to convict for the offense of aiding an attempted murder, the State must prove: (1) that the accomplice, acting with the specific intent to kill, took a substantial step toward the commission of murder, and (2) that the defendant, acting with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused the accomplice to commit the crime of attempted murder.

The accomplice liability statute does not set forth a separate crime, but merely provides a separate basis of liability for the crime that is charged. Hampton v. State, 719 N.E.2d 803, 807 (Ind. 1999). Thus, an individual who aids another person in committing a crime is as guilty of the crime as the actual perpetrator. Id.; see also Ind. Code § 35-41-2-4 ("A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense."). And an accomplice need not participate in each and every element of the crime in order to be convicted of it. Specht v. State, 838 N.E.2d 1081, 1092 (Ind. Ct. App. 2005).

In determining whether a person aided another in the commission of a crime, a court should consider the following four factors: (1) the defendant's presence at the scene of the crime; (2) the defendant's companionship with another engaged in criminal activity; (3) the defendant's failure to oppose the crime; and (4) the defendant's conduct before, during, and after the occurrence of the crime. Vandivier v. State, 822 N.E.2d 1047, 1054 (Ind. Ct. App. 2005) (citing Garland v. State, 788 N.E.2d 425, 431 (Ind. 2003)). A defendant may be convicted as an accomplice where he merely had a tangential involvement in the crime. Ajabu v. State, 693 N.E.2d 921, 937 (Ind. 1998). Evidence that the accomplice acted in concert with those who physically committed the elements of the crime is sufficient to support a conviction as an accomplice. Porter v. State, 715 N.E.2d 868, 870 (Ind. 1999).

Here, the evidence most favorable to the judgment reveals that McDuffy threatened Finney and Keys multiple times inside the recording studio, brandished his firearm, and seized the men's cash, keys, and laptop. He instructed his associate to stop

7

Finney when Finney tried to escape and ordered that Finney and Keys be tied up.  He demanded information about McMitchell's death and told Finney and Keys "you are all going to die."  Tr. p. 153.  He struck Finney on the head with his gun and helped secure zip ties and duct tape tightly around Finney and Keys's throats, faces, and bodies. Security video footage from a nearby hardware store shows McDuffy and two other men purchasing the box cutter, zip ties, and duct tape used in the crime.  Store records indicate that it was McDuffy's gift card that paid for the items.

From this evidence, the jury could have reasonably concluded that McDuffy was guilty of aiding, inducing, or causing the attempted murder of Finney.  See Echols v. State, 722 N.E.2d 805, 807 (Ind. 2000) (holding that evidence was sufficient to support defendant's conviction for murder and attempted murder under a theory of accomplice liability where defendant drove his nephew to an apartment complex, guns were clearly visible inside the car, and nephew shot at a crowd at the apartment complex); McGee v. State, 699 N.E.2d 264 (Ind. 1998) (concluding that evidence that defendant and another person forced their way into victim's apartment armed with baseball bat and knife and beat victim with bat and knife handle, and that defendant threatened to kill victim and held victim so other person could slash victim with knife, was sufficient to permit reasonable trier of fact to find that other person acted with intent to kill and that defendant was his accomplice in that endeavor); B.K.C. v. State, 781 N.E.2d 1157, 1165 (Ind. Ct. App. 2003) (holding that evidence was sufficient to support juvenile adjudication of accomplice liability for robbery where juvenile accompanied perpetrator to restaurant, did nothing to oppose perpetrator when he brandished a weapon, ran and

8

hid with perpetrator when other customers entered the restaurant, and demanded that restaurant employee open a door through which juvenile and perpetrator fled).

## II. Accomplice to Murder

McDuffy next argues that the State failed to provide sufficient evidence to sustain his conviction for Keys's murder. To convict McDuffy of murder as charged, the State was required to prove that McDuffy knowingly or intentionally aided, induced, or caused another to commit the knowing or intentional killing of Keys. Ind. Code § 35-42-1-1(1).

The evidence most favorable to the conviction reveals that McDuffy told Finney and Keys "you are all going to die" and helped place zip ties tightly around their necks and duct tape over their faces, heads, and bodies. He blocked Finney's escape and remained in the room with the two victims after other members of the group left. He helped purchase the box cutters, zip ties, and duct tape used to carry out the crimes. This evidence was sufficient to support McDuffy's conviction for murder under a theory of accomplice liability. See Spurlock v. State, 506 N.E.2d 40 (Ind. 1987) (concluding that, under the principle of accomplice liability, there was sufficient evidence to support defendant's conviction for murder, even though there was no evidence that defendant himself actually shot the victims; it was clear from the evidence that at least one of the persons acting in concert with defendant shot the victims); Specht v. State, 838 N.E.2d 1081 (Ind. Ct. App. 2005) (holding that the evidence was sufficient to support jury's finding that defendant knowingly aided in the murder of store clerk, where defendant handed his companion his gloves and a handgun while companion was jumping around talking about killing everybody, and after companion entered the store and began

9

shooting, defendant followed and stood at the door, holding a shotgun, as companion continued to fire his weapon, killing the clerk).

### III. Habitual Offender

McDuffy next contends that the evidence is insufficient to sustain the trial court's determination that he is an habitual offender. Specifically, he argues that "[t]he exhibits introduced by the State failed to show that he was arrested, charged and convicted of two unrelated felonies because there was no way to discern if the alleged prior convictions are in their proper statutory sequence due to the confusing exhibits entered" and that "the charging information for the second alleged offense listed two misdemeanor charges, not felonies." Appellant's Br. at 6-7.

The purpose of an habitual offender enhancement is to penalize more severely those persons whom prior sanctions have failed to deter from committing felonies. Marsillett v. State, 495 N.E.2d 699, 705 (Ind. 1986). To establish that the defendant is an habitual offender, the State must prove beyond a reasonable doubt that the defendant has been previously convicted of two separate and unrelated felonies. Ind. Code § 35-50-2-8. To be "unrelated," the commission of the second felony must be subsequent to the sentencing for the first, and the sentencing for the second felony must have preceded the commission of the current felony for which the enhanced sentence is being sought. Toney v. State, 715 N.E.2d 367, 369 (Ind. 1999). Failure to prove the proper sequencing requires that the habitual offender determination be vacated. Henderson v. State, 534 N.E.2d 1105, 1109 (Ind. 1989).

In addressing the issue of sufficiency of evidence, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was convicted of two previous separate and unrelated felonies beyond a reasonable doubt. Id.

At the bench trial for McDuffy's habitual offender enhancement, the State presented Exhibit 1, charging information for Class D felony theft with an offense date of November 2, 2000 and an abstract of judgment for Class D felony theft with a sentencing date of May 10, 2001. State's Exhibit 3 was a police arrest report for a juvenile case listing the offense of felony theft, with an arrest date of November 2, 2000. The State also presented Exhibit 2, which included charging information for Class A misdemeanor carrying a handgun without a license with an arrest date of October 31, 2002, and a sentencing abstract indicating that McDuffy was sentenced on May 15, 2003 for Class C felony carrying a handgun without a license.[2] State's Exhibit 4 was a police arrest report dated October 31, 2002 showing that McDuffy was arrested for Class C felony carrying a handgun without a license. The State also provided testimony that all of the fingerprints associated with the exhibits belonged to McDuffy.

McDuffy contends that State's Exhibits 1 and 3, showing McDuffy's felony theft conviction, do not list the same cause number, that the State's Exhibits 2 and 4, showing McDuffy's handgun offense, list different arrest dates, and that Exhibit 2 lists a

---

[2] McDuffy was charged with Class A misdemeanor carrying a handgun without a license, which was elevated to Class C felony carrying a handgun without a license due to his prior Class D felony theft conviction.

11

misdemeanor, not a felony. Our review of the evidence reveals that McDuffy's assertion that the arrest date for his Class C felony carrying a handgun without a license conviction is different on the charging information than on the arrest report is incorrect. Both documents list October 31, 2002 as the arrest date. Exhibit 2 does indicate that McDuffy was charged with Class A misdemeanor carrying a handgun without a license but convicted of Class C felony carrying a handgun without a license. The record shows that McDuffy's misdemeanor charge was elevated to a felony pursuant to Indiana Code section 35-47-2-1, since McDuffy had a prior felony conviction.

As to McDuffy's observation that the State submitted documentation containing two different cause numbers for his Class D felony theft conviction, the record indicates that McDuffy was arrested for the offense on December 6, 2000, two months before his eighteenth birthday, and that the case began as a juvenile case, but that McDuffy was waived into adult criminal court and the case became an adult case with a different cause number. Under these facts and circumstances, we conclude that the State presented sufficient evidence to prove that McDuffy has accumulated two prior, unrelated felonies. As a result, McDuffy qualifies as an habitual offender. McDuffy's claim to the contrary amounts to a request that we reweigh the evidence, which we will not do. See Henderson, 534 N.E.2d at 1109.

### IV. Double Jeopardy

Finally, although McDuffy does not raise this claim, we conclude that his convictions and sentences for kidnapping and conspiracy to commit kidnapping violate double jeopardy principles. "We raise this issue *sua sponte* because a double jeopardy

12

violation, if shown, implicates fundamental rights." Smith v. State, 881 N.E.2d 1040, 1047 (Ind. Ct. App. 2008).

"[A] defendant may be convicted of both conspiracy to commit a felony and commission of the underlying felony. A double jeopardy violation occurs where the same evidence used to prove the overt act committed in furtherance of the conspiracy also proves the commission of the underlying crime." Johnson v. State, 749 N.E.2d 1103, 1108 (Ind. 2001) (citation omitted).

Applying this test to the facts of the case before us, we conclude that McDuffy's convictions for Class A felony kidnapping and Class A felony conspiracy to commit kidnapping constitute impermissible double jeopardy. The State alleged that McDuffy and his associates committed conspiracy to commit kidnapping when they:

> with intent to commit the felony of Kidnapping, agree[ed] between and with one another to commit said felony of Kidnapping, which is to knowingly remove another person by fraud, enticement, force, or threat of force from one place to another with intent to obtain ransom or with intent to use the person removed as a hostage, and, further, that [McDuffy and his associates] performed the following overt act or acts in furtherance of the agreement, that is: enticed Keys to the music studio and purchased zip-ties, duct tape and a piece of wood to be used in securing Keys and/or Finney in an attempt to get information and/or hold them hostage for information[.]

Appellant's App. pp. 39-40.

Thus, *some* of the evidentiary facts establishing the elements of Class A felony conspiracy to commit kidnapping also established *all* of the essential elements of the Class A felony kidnapping. This constitutes impermissible double jeopardy. See Chappell v. State, 966 N.E.2d 124, 132 (Ind. Ct. App. 2012), trans. denied.

13

Because McDuffy's convictions for both Class A felony kidnapping and Class A felony conspiracy to commit kidnapping are impermissible, we vacate McDuffy's conviction for Class A felony conspiracy to commit kidnapping and remand with instructions that the trial court vacate McDuffy's sentence thereon. Because McDuffy's sentence on his conspiracy conviction was to run concurrently with his sentence on his kidnapping conviction, McDuffy's aggregate sentence will be unaffected.

**Conclusion**

We vacate McDuffy's conspiracy to commit kidnapping conviction and sentence on double jeopardy grounds and remand with instructions that the trial court vacate McDuffy's sentence thereon. In all other respects, we affirm. Because the trial court imposed a concurrent sentence for the vacated conviction, the vacation of the conspiracy conviction and sentence will have no effect on McDuffy's aggregate sentence of 185 years.

Affirmed in part, vacated in part, and remanded with instructions.

RILEY, J., and CRONE, J., concur.