## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 09 2015, 10:01 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Lawrence D. Newman
Newman & Newman, P.C.
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stephen Perry,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 9, 2015

Court of Appeals Case No.
29A04-1406-CR-291

Appeal from the Hamilton Superior Court.
The Honorable William J. Hughes, Judge.
Cause No. 29D03-1212-FA-11444

**Baker, Judge.**

[1] Stephen Perry appeals his conviction for Conspiracy to Commit Murder,[1] a class A felony. Perry argues that the evidence was insufficient to support his conviction and that, therefore, the trial court erred in denying his motion for judgment on the evidence. Finding sufficient evidence, we affirm.

## Facts

[2] Stephen Perry and Allison Mayer married in 2009. In May 2012, Perry filed for divorce. During November and December of that year, Perry began discussing his divorce with Adrian Howard, who worked with Perry at Valvoline Instant Oil Change. Initially, Perry spoke simply of his unhappiness with his situation. However, after a few conversations, Perry began to ask Howard about having Mayer killed.

[3] Howard tried to keep his composure and continue to discuss the issue with Perry. The two had several more conversations and, eventually, Perry offered Howard $15,000 to find somebody to kill Mayer. Perry also claimed to have built a machine that prints money and told Howard he could have this as well. Howard, realizing that Perry was serious, told him that he would find someone.

[4] However, Howard had no intention of finding anyone. He continued to converse with Perry, who began to provide Howard information regarding Mayer. Perry told Howard that Mayer was living with her grandparents and

---

[1] Ind. Code § 35-42-1-1; Ind. Code § 35-41-5-2.

gave Howard the address on a piece of paper. He informed Howard that the house did not have a working security alarm and provided Howard with a hand-drawn map of the area. Perry gave Howard permission to take two laptops from the house as additional payment. He stated: "If this is gonna be done tonight, I can have cash Monday or Tuesday." State's Ex. 1 No. 8.

[5] Following these conversations, Perry approached Howard several times to ask if he had found someone to kill Mayer. Howard brushed Perry's questions aside and contacted Mayer. He had recorded two of his conversations with Perry on his cell phone. He met with Mayer and played her the recordings. After hearing the recordings, Mayer took Howard's phone to the police, who later apprehended Perry.

[6] On December 31, 2012, Perry was charged with class A felony conspiracy to commit murder. A jury trial was held on April 8, 2014. Following the State's case in chief, Perry moved for judgment on the evidence. The trial court denied this motion and the jury found Perry guilty as charged. Perry again moved for judgment on the evidence, and the trial court held a hearing on May 27, 2014. Following this hearing, the trial court denied Perry's motion and sentenced Perry to twenty years with five years executed, five years suspended to probation, and ten years suspended. Perry now appeals.

# Discussion and Decision

[7] Perry argues that the evidence presented at trial was insufficient to support his conviction for class A felony conspiracy to commit murder.[2] In reviewing a challenge to the sufficiency of the evidence, this Court neither reweighs the evidence nor assesses the credibility of the witnesses. *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004). We will affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

[8] To convict Perry of conspiracy to commit murder, the State had to prove beyond a reasonable doubt that Perry, with the intent to commit murder, (1) agreed with another person to commit murder, and (2) performed an overt act in furtherance of the agreement. I.C. § 35-41-5-2. Perry argues that the evidence was insufficient to prove that he did either of these things.

[9] Regarding the agreement, the State is not required to present evidence of an express agreement. *Drakulich v. State*, 877 N.E.2d 525, 531-32 (Ind. Ct. App. 2007). It is sufficient to show that "the minds of the parties [met] understandably to bring about an intelligent and deliberate agreement to

---

[2] Perry divides this into two issues: (1) whether the evidence was sufficient to sustain his conviction and (2) whether the trial court erred in denying his motion for judgment on the evidence because the evidence was insufficient to sustain his conviction. We note that "if the evidence is sufficient to support a conviction on appeal, then the trial court's denial of a Motion for a Directed Verdict cannot be in error." *Huber v. State*, 805 N.E.2d 887, 890 (Ind. Ct. App. 2004). Because we find that the evidence was sufficient in this case, that is the only issue we need address.

commit the offense." *Id.* at 532 (quoting *Porter v. State*, 715 N.E.2d 868, 870-71 (Ind. 1999)). The agreement may be inferred from circumstantial evidence alone, including overt acts of the parties in pursuance of the criminal act. *Id.* Furthermore, Indiana has adopted the unilateral theory of conspiracy, whereby the State is not required to prove that the co-conspirator actually intended to carry out the conspiracy. *Tidwell v. State*, 644 N.E.2d 557, 559 (Ind. 1994).

[10] Here, the State presented evidence that Perry had multiple conversations with Howard regarding the murder of Mayer. Howard testified that Perry began to discuss Mayer and his relationship with her and that "later it came to a conversation, a personal conversation where he wanted to ask about his wife being killed." Tr. p. 241. Howard further testified:

> A:    [H]e started talking to me about the troubles of his wife and the divorce he was going through and how it was causing him a headache and how he wanted it to just be over and he wanted her to be dead and everything. . . .
>
> Q:    Yes. How did it continue?
>
> A:    [H]e just basically told me that if I find somebody he'll pay me $15,000. He also engineered some machine that prints out money, which was kind of outrageous to me. He told me he'll pay me and he'll give me that machine and some laptops or something like that if I found somebody to kill her.
>
>                                             * * *
>
> Q:    Did you say anything to him that you would not go find someone?
>
> A:    I actually told him that I would find someone.

Tr. p. 242-43. Following this discussion, Perry stated: "If this is gonna be done tonight, I can have cash Monday or Tuesday." State's Ex. 1 No. 8. He provided Howard with the address of the house where Mayer was staying. Howard also testified that after this discussion Perry approached him several times to ask if Howard had found someone. Tr. p. 247

[11] This evidence was sufficient to allow a reasonable jury to infer that Perry believed he had come to an intelligent and deliberate agreement to have Mayer killed. The evidence showed that Perry offered Howard a large sum of money, as well as several other items, in exchange for Mayer's murder. Perry's statement that he could have the money by Monday or Tuesday, along with the fact that he provided Howard with directions to Mayer's residence, showed that he was prepared to go through with the deal. A reasonable jury could infer that, had Howard found somebody to kill Mayer that night, Perry would have held up his end of the bargain.

[12] This evidence is also sufficient to show that Perry committed an overt act in furtherance of the agreement. "The overt act need not rise to the level of a 'substantial step' required for an attempt to commit the felony." *Owens v. State*, 929 N.E.2d 754, 756-57 (Ind. 2010). Thus, in the conspiracy context, an overt act can include prepatory steps. *Conn v. State*, 948 N.E.2d 849, 854 (Ind. Ct. App. 2011).

[13] Howard testified that, after Howard agreed to find someone to kill Mayer, "[Perry] got more in depth with what she did for a living, where she stayed, her

grandparents' house." Tr. p. 246. Howard further testified: "He actually drew it out, well, he wrote the address for me and her name on a piece of paper." *Id.* A reasonable jury could find that these were overt acts made in an attempt to assist Howard in carrying out the mission.

[14] Consequently, we find that the evidence was sufficient to allow a reasonable jury to infer that Perry's actions satisfied the underlying elements of conspiracy to commit murder beyond a reasonable doubt. Likewise, we find no error in the denial of Perry's motions for judgment on the evidence.

[15] The judgment of the trial court is affirmed.

May, J., and Barnes, J., concur.