

ATTORNEY FOR APPELLANT

Eugene A. Kress
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

J.T. Whitehead
Nicole D. Wiggins
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Katrina Louise Fouts,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 24, 2023

Court of Appeals Case No.
22A-CR-917

Appeal from the Hamilton
Superior Court

The Honorable William J. Hughes,
Judge

Trial Court Cause No.
29D03-2009-MR-5701

**Opinion by Judge Robb**
Judges Riley and Tavitas concur.

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Katrina Fouts was convicted of conspiracy to commit murder, a Level 1 felony, and failure to report human remains, a Class A misdemeanor. Fouts now appeals, raising multiple issues for our review which we restate as: (1) whether there was sufficient evidence to support her convictions; (2) whether the trial court abused its discretion in admitting certain evidence; and (3) whether the State committed prosecutorial misconduct amounting to fundamental error. Concluding the State presented sufficient evidence to support Fouts' convictions, the trial court did not abuse its discretion in admitting evidence, and the State did not commit fundamental error, we affirm.

## Facts and Procedural History[1]

[2] Fouts and David Fouts were married in 2019. On April 24, 2020, David's body was found in a ditch alongside Overdorf Road in Hamilton County. David had last been seen on April 21.

[3] Detectives Larry Bendzen and Christopher Yates of the Hamilton County Sheriff's Department responded to the scene and observed David with his left arm through the sleeve of a pink shirt and a leather rifle sling across his face. Further, there were cutting marks near the neck area of the pink shirt and

---

[1] We held a traveling oral argument in this case on March 28, 2023, at Morton High School. We commend counsel on the quality of their oral and written advocacy, and we thank Morton and the Lake County Bar Association for hosting the event, as well as the attendees for the insightful questions posed to the panel and counsel after the argument.

evidence that David's ankles and wrists had been taped. Given the state of David's body, including that his feet were bare but clean, officers concluded David did not die in that location. Deputy Coroner Mark Epperson concurred. *See* Transcript, Volume 3 at 202.

[4] An autopsy was conducted and revealed that David's stomach contents included mushrooms. His stomach contents were then sent to mycologist Dr. Mary Aime for further testing. Dr. Aime was able to identify lyophyllum connatum mushrooms through testing which are known to produce toxins such as muscarine.[2] However, David's urine, liver, and kidney tested negative for such toxins. Dr. David Sozio, a forensic pathologist, testified that he could not "rule out between poisoning and asphyxia" but concluded David died of "[h]omicide by unspecified means[.]" Tr., Vol. 4 at 114-15.

[5] After the autopsy, Detective Greg Lockhart went to Fouts' home and informed her of David's death. Police then obtained and executed search warrants for numerous cell phones, vehicles, and computers. Cell phone analysis established that Fouts' top contact was Terry Hopkins whom she contacted 734 times between March 27 and April 27. Hopkins was a retired police officer and was the caretaker of Fouts' father Glen Gentry. Fouts described Hopkins as a "good friend" and "second father" to her. *Id.* at 155. However, Fouts told police that

---

[2] Lyophyllum connatum is a pure white mushroom usually growing in dense clusters beside woodland paths. Muscarine is a naturally occurring toxin in some mushrooms and can be dangerous if ingested.

Hopkins and David "absolutely did not get along [and] did not like each other." *Id.*

[6] During the search, police located multiple vehicles in Fouts' garage including a Nissan Rogue and Volkswagen Tiguan. Hopkins used the Rogue to transport Gentry because Gentry could not drive himself. The Tiguan was used by Fouts. Police also discovered a hydraulic lift with a piece of cardboard on top of it in the garage. A mat for the hydraulic lift was then found in the trunk of the Rogue. Fouts told police that Hopkins had purchased the hydraulic lift to help her move items from her garage into the house and that they had assembled it April 23, after David had gone missing. However, when DNA analysis was performed on the hydraulic lift mat, it contained samples of David's DNA. The cardboard also contained blood and DNA from Hopkins and Fouts.

[7] In addition, police found multiple items of interest in the Rogue, including a variety of tools, a box cutter knife, and zip ties. Also, receipts showed that when Hopkins purchased these supplies, he also purchased two pairs of cleaning gloves, sizes small and medium. In the Tiguan, police found a revolver wrapped in plastic. Police also found walkie-talkies in each vehicle. They were the same make and model and tuned to the same channel and subchannel. The box cutter knife found in the Rogue was later tested and had "small pink fibers" on one side of the blade. *Id.* at 234. When Hopkins was taken in by the police, he displayed numerous injuries including deep bruising on his chest and cuts and lacerations on his hands and arms.

[8] On September 17, 2020, the State charged Fouts with murder, a felony; conspiracy to commit murder, a Level 1 felony; failure to report human remains, a Class A misdemeanor; and false informing, a Class B misdemeanor. The false informing charge was subsequently dismissed. When police arrested Fouts, she was in possession of a bag containing $40,000 in United States currency. Fouts was also in possession of a phone that had the following web search history:

- Know Your Rights

- Spy Escape

- How to Disappear Completely

- How to Move Away and Never Be Found Again

- Fake Driver License ID USA

*See* Exhibits, Volume 8 at 81-82.

[9] Prior to trial, Fouts moved to exclude testimony from Detective Lockhart regarding statements she made to him. The trial court concluded that Fouts' statements to Detective Lockhart were not a confession and therefore not precluded from admission. *See* Tr., Vol. 2 at 91-92. At trial, without objection from Fouts, Detective Lockhart testified:

> I stated to her you have to know at this point we know that you killed . . . David and there was a pause and she said, I know.

Tr., Vol. 5 at 217. Subsequently, during the State's rebuttal to Fouts' closing argument, the prosecutor stated:

> Direct evidence of a crime includes the confessions and admissions of the accused. A confession need not be an explicit and direct admission of guilt . . . to be considered direct evidence. . . . So, even if you want to assume or believe that that is the only piece of direct evidence in this case, it's a pretty strong one. The admission to Detective Lockhart.

Tr., Vol. 6 at 85. Following this statement, Fouts did not object, request an admonishment, or move for a mistrial.

[10] The jury found Fouts not guilty of murder but guilty of conspiracy to commit murder and failure to report human remains. The trial court sentenced Fouts to an aggregate term of thirty-four years executed in the Indiana Department of Correction. Fouts now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## II.  Sufficiency of the Evidence

### A.  Standard of Review

[11] When reviewing the sufficiency of the evidence required to support a conviction, we do not reweigh the evidence or judge the credibility of the witnesses. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Instead, we consider only the evidence supporting the verdict and any reasonable inferences that can be drawn therefrom. *Morris v. State*, 114 N.E.3d 531, 535 (Ind. Ct. App.

2018), *trans. denied*. We consider conflicting evidence most favorably to the verdict. *Silvers v. State*, 114 N.E.3d 931, 936 (Ind. Ct. App. 2018). "We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). The evidence need not overcome every reasonable hypothesis of innocence; it is sufficient if an inference may reasonably be drawn from the evidence to support the judgment. *Silvers*, 114 N.E.3d at 936.

## B.  Conspiracy to Commit Murder

[12]  Fouts challenges the sufficiency of the evidence supporting her conspiracy to commit murder conviction. The State bears the burden of proving all elements of the charged crime beyond a reasonable doubt. *Taylor v. State*, 587 N.E.2d 1293, 1301 (Ind. 1992); *see also* Ind. Code § 35-41-4-1(a). To convict Fouts of conspiracy to commit murder, the State had to prove beyond a reasonable doubt that (1) Fouts (2) knowingly or intentionally (3) agreed with Hopkins to commit murder and (4) performed an overt act in furtherance of the agreement. *See* Ind. Code § 35-41-5-2(a)(2), (b); Ind. Code § 35-42-1-1(1); *Perkins v. State*, 483 N.E.2d 1379, 1385 (Ind. 1985). Fouts argues there is insufficient evidence of (A) intent to commit murder or (B) an agreement between Fouts and Hopkins.[3]

---

[3] Fouts does not challenge the overt act prong.

The State is not required to establish the existence of a formal express agreement to prove a conspiracy. *Cockrell v. State*, 743 N.E.2d 799, 804 (Ind. Ct. App. 2001). "'It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to commit the offense.'" *Weida v. State*, 778 N.E.2d 843, 847 (Ind. Ct. App. 2002) (quoting *Porter v. State*, 715 N.E.2d 868, 871 (Ind. 1999)). An agreement can be inferred from circumstantial evidence, which may include the overt acts of the parties in furtherance of the criminal act. *Id.* Likewise, to determine whether the defendant had the requisite intent to commit the crime alleged, "[t]he trier of fact must usually resort to circumstantial evidence or reasonable inferences drawn from examination of the circumstances surrounding the crime[.]" *Brown v. State*, 659 N.E.2d 652, 657 (Ind. Ct. App. 1995) (quotation omitted), *trans. denied.*

Fouts concedes the following circumstantial evidence regarding an agreement exists:

> (1) Hopkins' Harbor Freight purchases; (2) Phone records of conversations between the parties; (3) GPS evidence showing Hopkins and Mrs. Fouts whereabouts during the time frame that investigators believe the crime was committed; (4) a video of two vehicles passing the Star Financial Center; (5) DNA linking David Fouts to the hydraulic lift cart; (6) Hopkins knife with fibers that may or may not have come from the shirt found on David Fouts' body; (7) There is DNA evidence that primarily points to Hopkins; (8) Two walkie-talkies set to the same channel; (9) Photos of Hopkins' bruised torso and other scratches; (10) Mrs. Fouts' statements to detectives as well as her web searches and the fact she had cash on her when arrested.

Appellant's Brief at 24-25.[4] Fouts contends this evidence is not sufficient to establish an agreement; however, Fouts' argument is essentially a request to reweigh the evidence, which we will not do. *Riehle v. State*, 823 N.E.2d 287, 292 (Ind. Ct. App. 2005), *trans. denied*.

[15] Fouts also argues the requisite intent was not proven because "[t]he total evidence in the instant case is insufficient, even with reasonable inferences, to have proven homicide beyond a reasonable doubt as the cause of death." Appellant's Br. at 24. Here, as pointed out by Fouts, Dr. Sozio was unable to determine whether David died from mushroom poisoning or asphyxia. However, "[w]e have held in numerous cases that medical testimony is not an absolute requirement to establishing the cause of death in a murder case." *Wilson v. State*, 432 N.E.2d 30, 33 (Ind. 1982). The cause of death is not an element of the offense; "the element in question is the killing, absent a suggestion of intervening cause." *Id.* Dr. Sozio concluded David died of "[h]omicide by unspecified means[.]" Tr., Vol. 4 at 114-15. Also, the State presented other evidence of foul play, including but not limited to, the circumstantial evidence conceded by Fouts.

[16] Therefore, we conclude the State presented sufficient evidence to support Fouts' conspiracy to commit murder conviction.

---

[4] Fouts states this is circumstantial evidence of an agreement. However, we believe it also supports the intent prong. Further, we note the circumstantial evidence is not limited to the evidence highlighted by Fouts.

## C. Failure to Report Human Remains

[17] Fouts also argues there was insufficient evidence to support her conviction of failure to report human remains. Pursuant to Indiana Code section 35-45-19-3, a person who discovers or handles human remains when it appears the deceased person died "suddenly, while in apparent good health; . . . from poisoning[;] . . . [or] under any other suspicious or unusual circumstances" and "knowingly or intentionally" fails to report the human remains "within three (3) hours after finding the human remains" commits failure to report human remains, a Class A misdemeanor.

[18] Fouts contends she could not comply with the three-hour window of time to report David's remains because there is no evidence "of when or if she discovered the body." Appellant's Br. at 36. However, Fouts' argument is again a request to reweigh the evidence. *Riehle*, 823 N.E.2d at 292.

[19] First, the evidence that David was moved after death seems clear. There was evidence that his ankles and wrists had been taped. Further, given the state of David's body, including that his feet were bare but clean, officers and Deputy Coroner Epperson concluded that David did not die in the location where he was found. *See* Tr., Vol. 3 at 202.

[20] Next, there is evidence that David was moved from Fouts' home by Hopkins. In Fouts' garage, police discovered a hydraulic lift with a piece of cardboard on top of it. A mat for the hydraulic lift was then found in the trunk of the vehicle Hopkins drove. When DNA analysis was performed on the hydraulic lift mat, it

contained samples of David's DNA. The cardboard also contained blood and DNA from Hopkins and Fouts. The box cutter knife found in Hopkins' vehicle was later tested and "small pink fibers" were found on one side of the blade. Tr., Vol. 4 at 234. Further, when police found Hopkins, he displayed numerous cuts and other injuries including deep bruising on his chest and cuts and lacerations on his hands and arms.

[21] Last, there is evidence to suggest Fouts helped transport the body or had knowledge the murder occurred. Cellphone records show a large amount of communication between Fouts and Hopkins and Fouts stopped texting David around the time of his death. Hopkins and Fouts both had walkie-talkies in their cars. Fouts told police that she and Hopkins had purchased the hydraulic lift and built it together after David was last seen. And when purchasing the supplies that were seemingly used to transfer David's body, Hopkins purchased two pairs of cleaning gloves.

[22] Therefore, there was sufficient evidence Fouts committed failure to report human remains.

## II.   Admission of Evidence

### A.   Standard of Review

[23] The trial court has broad discretion in ruling on the admissibility of evidence. *Small v. State*, 632 N.E.2d 779, 782 (Ind. Ct. App. 1994), *trans. denied.* We will disturb its ruling only upon a showing of abuse of that discretion. *Id.* An abuse of discretion may occur if the trial court's decision is

clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Baxter v. State*, 734 N.E.2d 642, 645 (Ind. Ct. App. 2000).

[24] But even if a trial court abuses its discretion by admitting challenged evidence, we will not reverse the conviction if the admission of evidence constitutes harmless error. *Sugg v. State*, 991 N.E.2d 601, 607 (Ind. Ct. App. 2013), *trans. denied.* Error in the admission of evidence is harmless if it does not affect the substantial rights of the defendant. *See McVey v. State*, 863 N.E.2d 434, 440 (Ind. Ct. App. 2007), *trans. denied.* In determining whether an evidentiary ruling has affected a defendant's substantial rights, we assess the probable impact of the evidence on the factfinder. *Mathis v. State*, 859 N.E.2d 1275, 1280 (Ind. Ct. App. 2007).

## B.   Testimony

[25] Fouts challenges the admission of the following testimony from Detective Lockhart:

> I asked her or I stated to her you have to know at this point we know that you killed . . . David and there was a pause and she said, I know.

Tr., Vol. 5 at 217. Fouts did not raise a contemporaneous objection to this testimony at trial; however, Fouts contends the admission of the testimony constitutes fundamental error. The fundamental error exception to the contemporaneous-objection requirement applies only "when the error

constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (quotation omitted). The alleged error must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process. *Id*. The fundamental error exception is "extremely narrow" and reaches only those errors that are so blatant the trial judge should have taken action *sua sponte*. *Knapp v. State*, 9 N.E.3d 1274, 1281 (Ind. 2014), *cert. denied*, 574 U.S. 1091 (2015).

[26] Fouts argues her statement to Detective Lockhart was a confession and not supported by sufficient corpus delicti.[5] In Indiana, to support the introduction of a defendant's confession into evidence, the corpus delicti of the crime must be established by independent evidence of both (1) the occurrence of the specific kind of injury and (2) someone's criminal act as the cause of the injury. *Williams v. State*, 837 N.E.2d 615, 617 (Ind. Ct. App. 2005), *trans. denied*. That independent evidence need not be shown beyond a reasonable doubt; rather,

---

[5] At the preliminary hearing, the trial court determined that Fouts' statement was neither a confession nor admission. *See* Tr., Vol. 2 at 90-92. "A confession is the admission of guilt by the defendant of all the necessary elements of the crime of which he is charged." *Worthington v. State*, 409 N.E.2d 1261, 1271 (Ind. Ct. App. 1980). Conversely, an admission "merely admits some fact which tends to connect the defendant with the alleged offense." *Parsons v. State*, 166 Ind.App 152, 333 N.E.2d 871, 873 (1975). However, the distinction is immaterial to issues of corpus delicti since our case law applies the corpus delicti requirement to the introduction of admissions as well as confessions. *Watts v. State*, 229 Ind. 80, 95 N.E.2d 570, 579 (1950). We note the State does not argue the statement was *not* a confession; instead, the State contends there was sufficient corpus delicti. Because we determine there was sufficient corpus delicti, we need not determine whether Fouts' response to Detective Lockhart constituted an admission, a confession, or neither.

the evidence need only provide an inference that a crime was committed. *Id.* Such an inference may be established through circumstantial evidence. *Id.*

[27] In *Shinnick v. State*, our supreme court explained that the corpus delicti required to have a confession admitted is not the same as the corpus delicti required to sustain a conviction. 76 N.E.3d 841, 844 (Ind. 2017). To admit a confession, the State need only present sufficient evidence to create "an inference that the crime charged was committed"; it is not required to prove all the elements of a crime prior to the introduction of a confession. *Id.*

[28] Here, Fouts was charged with conspiracy to commit murder and failure to report human remains. We conclude the totality of independent evidence established an inference that the crimes charged occurred. As highlighted in the sufficiency of the evidence section, *supra* ¶¶ 12-22, the State presented evidence showing David died due to foul play, David's body was moved after death, Fouts and Hopkins were involved in David's death, and they conspired together to commit the murder.

[29] Given the evidence presented, we conclude the corpus delicti rule was satisfied and the trial court did not abuse its discretion by admitting Detective Lockhart's testimony.

## III. Prosecutorial Misconduct

[30] Fouts contends the prosecutor engaged in misconduct in the closing arguments. In reviewing a claim of prosecutorial misconduct, we first determine whether misconduct occurred, and then, if there was misconduct, whether under all of

the circumstances the misconduct placed the defendant in a position of grave peril to which he otherwise would not have been subjected. *Castillo v. State*, 974 N.E.2d 458, 468 (Ind. 2012). Whether a prosecutor's statements constitute misconduct is measured by reference to case law and the Rules of Professional Conduct. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). The degree of peril is measured by the probable persuasive effect of the misconduct on the jury's decision. *Id*.

[31] To preserve a claim of prosecutorial misconduct for appeal, "a defendant must not only raise a contemporaneous objection, he must also request an admonishment and, if the admonishment is not given or is insufficient to cure the error, then he must request a mistrial." *Washington v. State*, 902 N.E.2d 280, 289-90 (Ind. Ct. App. 2009), *trans. denied.* Failure to request an admonishment or a mistrial waives the claim of prosecutorial misconduct unless the defendant can demonstrate the misconduct amounted to fundamental error. *Castillo*, 974 N.E.2d at 468.

[32] Fouts failed to preserve her claim for appeal. Therefore, she must establish the grounds for prosecutorial misconduct as well as the grounds for fundamental error. Fouts argues the prosecutor's references to Fouts' statement to Detective Lockhart constituted misconduct. In closing argument, the prosecutor stated:

> Direct evidence of a crime includes the confessions and admissions of the accused. A confession need not be an explicit and direct admission of guilt . . . to be considered direct evidence. . . . So, even if you want to assume or believe that that is the only

piece of direct evidence in this case, it's a pretty strong one. The admission to Detective Lockhart.

Tr., Vol. 6 at 85. Fouts contends that "[b]y agreement of the parties, there was no confession [and] by telling th[e] jury repeatedly that there was a confession[,]" the prosecutor committed misconduct amounting to fundamental error. Appellant's Br. at 43. We disagree.

[33] Arguments made by attorneys at trial are not evidence, *Bass v. State*, 947 N.E.2d 456, 462 (Ind. Ct. App. 2011), *trans. denied*, and here the trial court instructed the jury of this prior to the parties' closing arguments. However, the prosecutor is required to confine closing argument to comments based upon the evidence presented in the record. *Lambert v. State*, 743 N.E.2d 719, 734 (Ind. 2001). The prosecutor may argue both law and facts and offer conclusions based upon his analysis of the evidence. *Id*.

[34] Here, Fouts' statement to Detective Lockhart was admitted into evidence. Thus, the prosecutor's comments were based upon evidence presented in the record. And although the prosecutor calls the statement an admission, we do not believe that is an unfair characterization. *See Cooper,* 854 N.E.2d at 837 (stating prosecutor's remarks in closing argument that defendant was a "back shooter" and "woman beater" were fair commentary on the facts introduced at trial); *Wrinkles v. State*, 749 N.E.2d 1179, 1197 (Ind. 2001) (holding prosecutor's references to defendant as a "psychopath" and "sociopathic" were fair characterizations of the evidence).

Further, even if the prosecutor's comments were considered misconduct, because Fouts' statement was in evidence and the jury was instructed that attorneys' arguments are not evidence, we cannot say that these comments were "so prejudicial to the defendant's rights as to make a fair trial impossible." *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014) (internal quotation marks omitted). We conclude there is no fundamental error.

## Conclusion

We conclude the State presented sufficient evidence to support Fouts' convictions, the trial court did not abuse its discretion in admitting evidence, and the State's closing argument did not amount to fundamental error. Accordingly, we affirm.

Affirmed.

Riley, J., and Tavitas, J., concur.