Dejuan EMERSON, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 49A02–0310–PC–869.

Court of Appeals of Indiana.

Aug. 6, 2004.

Robert D. King, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Dejuan Emerson appeals from the denial of his petition for post-conviction relief and presents the following issues for review:

1. Whether Emerson's appellate counsel was ineffective when she failed to argue on direct appeal that the State presented insufficient evidence to prove that Emerson had acted in concert or by agreement with another.

2. Whether stare decisis requires reversal of Emerson's murder conviction.

We affirm.

### FACTS AND PROCEDURAL HISTORY

Our supreme court explained the facts relevant to Emerson's convictions in relevant part as follows:

On the evening of July 31, 1996, several people were gathered at Watkins Park in Indianapolis watching and playing basketball. Among them were Kenneth Mason, Anthony Robinson, Mark Garrett and Ronnie Williams. Two men carrying guns walked onto the court during one of the games. One of those men, Larry Porter, approached Kenneth Mason and fatally shot him as Mason attempted to flee. The other man confronted the on-lookers and demanded various valuables. The State accused Dejuan Emerson as the non-shooter accomplice.

*Emerson v. State,* 724 N.E.2d 605, 607 (Ind.2000). Following trial, a jury found Emerson guilty of Felony Murder and Murder;[1] Conspiracy to Commit Robbery, as a Class A felony; Robbery, as a Class A felony; Robbery, as a Class B felony; and Carrying a Handgun Without a License, as a Class A misdemeanor. The trial court sentenced him to a total of 105 years.

In a separate trial, a jury convicted Porter of murder, robbery, and carrying a handgun without a license for killing Mason and taking his gold necklace. *Porter v. State,* 715 N.E.2d 868, 870 (Ind.1999). The jury also found Porter guilty of conspiracy to commit robbery and two counts of robbery as Emerson's accomplice. *Id.* The trial court sentenced Porter to 155 years. *Id.*

Both Emerson and Porter filed direct appeals. Porter did not challenge his conviction for murder, but argued that there was insufficient evidence to support his convictions for conspiracy and accomplice robbery. *Id.* at 869. In particular, Porter claimed that the State failed to present any evidence that he and Emerson had acted in concert or by agreement on the date in question.[2]

Emerson, on the other hand, raised several issues on direct appeal, most of which involved his identity as the person who had robbed two basketball players as Porter fatally shot Mason. Specifically, Emerson filed his Appellant's Brief on February 11, 1999, and raised the following issues: (1) whether the trial court erred in refusing to give his tendered instruction on identification; (2) whether an eyewitness was properly permitted to identify Emerson during his trial testimony; (3) whether the identity evidence was sufficient to support his convictions; (4) whether a pre-sentence report prepared by Emerson's probation officer was properly considered by the trial judge during sentencing; and (5) whether consecutive sentences for felony murder and the underlying felony violate double jeopardy.

Our supreme court decided Porter's case on September 8, 1999, nearly seven months after Emerson had filed his Appellant's Brief, and concluded that the State had failed to present sufficient evidence in Porter's trial to prove that he and Emerson had acted in concert or by agreement. *See Porter,* 715 N.E.2d at 872. Accordingly, the court vacated Porter's convictions and sentences for accomplice robbery and conspiracy to commit robbery.

Then, on March 1, 2000, the supreme court affirmed all of Emerson's convictions, except for the Class A robbery count. Specifically, because Emerson's consecutive sentences for felony murder and the underlying robbery violated double jeopardy, the court vacated his robbery conviction. *Emerson,* 724 N.E.2d at 612. In addressing Emerson's sufficiency of the evidence argument, the court noted that he did not attack the sufficiency of the evidence to support any specific crime, but only the evidence to establish that he was present at the park on the night of the shooting. *Id.* at 610 n. 1. The court then noted: "By contrast, for example, Porter contended on appeal that there was inadequate evidence that he and Emerson agreed to act in concert." *Id.* (citation omitted).

On March 31, 2000, Emerson filed a petition for rehearing and argued that,

---

1. Although the jury found Emerson guilty of both Felony Murder and Murder, the trial court properly entered judgment of conviction and sentenced him on only the Felony Murder count.

2. Porter also argued that his sentence was manifestly unreasonable. *Porter,* 715 N.E.2d at 872.

based on the court's decision in *Porter*, there was insufficient evidence to show that Emerson and Porter had acted in concert or by agreement. On September 20, 2000, our supreme court issued its Order on Rehearing, which provides in relevant part:

We affirmed all but one of appellant Dejuan Emerson's convictions, which were challenged here on direct appeal. *Emerson v. State*, 724 N.E.2d 605 (Ind. 2000).

Emerson has now petitioned for rehearing. He seeks to challenge for the first time the sufficiency of the evidence with respect to whether he acted in concert or by agreement with Larry Porter, two of whose convictions we vacated on grounds that there was insufficient evidence that Mr. Porter acted in concert or by agreement. *Porter v. State*, 715 N.E.2d 868 (Ind.1999).

Emerson contends that "[t]he evidence in Mr. Emerson's case was the same...." Pet. for Reh'g at 2. Porter and Emerson, however, were tried separately. As such, the evidence presented was not the same. In fact, the evidence in Emerson's trial better supports affirming the convictions on the basis of accomplice liability because it tends to establish that Porter and Emerson had actually arrived at the basketball court together. Relevant testimony, given by an eye-witness to the crime, is as follows:

Q. Tell the jury what happened while you were playing basketball there some time around 9:00 o'clock P.M.

A. Well that night we was playing basketball and two dudes came up on the court. One came underneath the basket and the other was on the side and one of them had a shiny chrome and the other one had like a black .38 and they told us like to everybody to stop on the court, quit playing basketball.

(R. at 247).

Whether there may be grounds for relief from the conspiracy conviction in a post-conviction proceeding remains to be seen, but a party may not raise a new question on rehearing for the first time on appeal. *Browne v. Blood*, 245 Ind. 447, ·199 N.E.2d 712 (1964). Accordingly, Emerson's Petition for Rehearing is DENIED.

Appellant's App. at 100–01 (brackets original).

In August 2001, Emerson filed a pro se petition for post-conviction relief, asserting that his speedy trial rights were violated, that he received ineffective assistance of trial and appellate counsel, that there was insufficient evidence to support his convictions, and that he was denied due process. The State filed its Answer and denied the allegations and raised various defenses. In November 2001, Emerson, again pro se, amended his petition and argued that there was insufficient evidence to prove that he and Porter had acted in concert, relying on *Porter*.

In April 2003, Emerson, with the assistance of counsel, filed his Submission of Materials. On that same date, the post-conviction court held a hearing, and the parties presented argument. In particular, Emerson argued that: (1) his appellate counsel was ineffective for failing to argue that there was insufficient evidence to show that Emerson and Porter acted in concert, and (2) the doctrine of inconsistent verdicts should be applied in light of the decision in *Porter*. In May, the parties filed their Stipulation of Evidence, which included portions of both Emerson's and Porter's trial records. The trial court granted the stipulation. Both parties submitted proposed findings and conclusions, and on August 11, 2003, the trial court

issued Findings of Fact and Conclusions of Law denying Emerson's petition. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

 The purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the time of the original trial and appeal. *Benson v. State*, 780 N.E.2d 413, 418 (Ind.Ct. App.2002), *trans. denied.* " 'Thus, post-conviction relief is not a "super-appeal" which allows the rehashing of prior proceedings regardless of the circumstances surrounding them.' " *Id.* (quoting *Collier v. State*, 572 N.E.2d 1299, 1301 (Ind.Ct. App.1991), *trans. denied*). When the petitioner has already been afforded the benefit of a direct appeal, post-conviction relief contemplates a rather small window for further review. *Id.* at 418.

 The petitioner bears the burden of establishing the grounds for relief by a preponderance of the evidence. *Id.* The post-conviction court must make findings of fact and conclusions of law on all issues presented in the petition. *Id.* The findings must be supported by the facts, and the conclusions must be supported by the law. *Id.* Our review on appeal is limited to those findings and conclusions. *Id.* And where, as here, the post-conviction court denies relief, Emerson appeals from a negative judgment and faces the rigorous burden of showing that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. *See id.*

### Issue One: Appellate Counsel

Emerson asserts that the post-conviction court erred when it denied his petition because he received the ineffective assistance of appellate counsel. In particular,

he maintains that his appellate counsel was ineffective because she failed to argue in a timely manner the claim that proved successful in *Porter,* namely, that there was insufficient evidence to prove that Emerson and Porter acted in concert or by agreement on the date each committed their offenses at Watkins Park.

 The standard of review for a claim of ineffective assistance of appellate counsel is essentially the same as for trial counsel in that the defendant must show that appellate counsel was deficient in his performance and that the deficiency resulted in prejudice. *Bieghler v. State*, 690 N.E.2d 188, 192–93 (Ind.1997) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)), *cert. denied*, 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 458 (1998). The court in *Bieghler* explained:

> Under this standard, "[j]udicial scrutiny of counsel's performance must be highly deferential[.]" As the *Strickland* court said:
>
>> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....

*Id.* at 192–93 (citations omitted). In addition, like the petitioner in *Bieghler*, Emerson faces an additional burden as one appealing from an adverse ruling of a post-conviction court. *See id.* at 193. Again, as the court in *Bieghler* stated:

First, we require the defendant or petitioner to show that, in light of all the circumstances, the identified acts or omissions of counsel were outside the wide range of professionally competent assistance. This showing is made by demonstrating that counsel's performance was unreasonable under prevailing professional norms. Second, we require the defendant or petitioner to show adverse prejudice as a result of the deficient performance. This showing is made by demonstrating that counsel's performance was so prejudicial that it deprived the defendant or petitioner of a fair trial. We will conclude that a fair trial has been denied when the conviction or sentence has resulted from a breakdown of the adversarial process that rendered the result unreliable.

*Id.* at 193 (citing *Canaan v. State,* 683 N.E.2d 227, 229 (Ind.1997), *cert. denied,* 524 U.S. 906, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998)) (internal citations omitted).

■■■ Ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Id.* 193–94. To show that counsel was deficient for failing to raise an issue on direct appeal, i.e., waiving the issue, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. *Ben–Yisrayl v. State,* 738 N.E.2d 253, 261 (Ind.2000), *cert. denied,* 534 U.S. 1164, 122 S.Ct. 1178, 152 L.Ed.2d 120 (2002). Our supreme court has adopted the following test to evaluate the performance prong of appellate counsel's performance: (1) whether the unraised issues are significant and obvious from the record; and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Bieghler,* 690 N.E.2d at 194; *Timberlake v. State,* 753 N.E.2d 591,

606 (Ind.2001), *cert. denied,* 537 U.S. 839, 123 S.Ct. 162, 154 L.Ed.2d 61 (2002). If that analysis demonstrates deficient performance by counsel, the court then examines whether "the issues which . . . appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial." *Bieghler,* 690 N.E.2d at 194 (citation omitted). Further, the reviewing court must:

. . . consider the totality of an attorney's performance to determine whether the client received constitutionally adequate assistance[,] . . . [and] should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made.

*Bieghler,* 690 N.E.2d at 194. Ineffectiveness is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal. *Id.* at 193 (citation omitted). One reason for this is that the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. *Id.*

■■■ In denying Emerson relief, the post-conviction court concluded that Emerson failed to demonstrate that his appellate counsel's performance was deficient. In particular, the court determined that appellate counsel did not fail to raise "a significant and obvious issue" that cannot be explained by reasonable strategy. Appellant's App. at 123. In reaching that conclusion, the post-conviction court first noted that Emerson's counsel did raise a sufficiency of the evidence challenge, but focused on the issue of identity. As the court noted, the identity issues counsel raised on direct appeal were all related,

"were all properly preserved by trial counsel, supported by the record and would have led to reversal of all of petitioner's convictions, had the claims prevailed." *Id.* at 123.

The court then pointed out that in its Order on Rehearing, our supreme court suggested that the evidence presented at Emerson's trial "better supports affirming the convictions on the basis of accomplice liability because it tends to establish that Porter and Emerson actually arrived at the basketball court together." *Id.* at 123–245. The post-conviction court's conclusions then state as follows:

> The Court finds that Petitioner cannot satisfy his burden of proving that appellate counsel [Anne] Sutton failed to present a significant and obvious issue. In addition to [our supreme court's] specific citation, this Court finds that other evidence shows that Porter and Petitioner arrived at the same location at the same time, both carrying handguns and robbed their victims of jewelry, and Porter and Petitioner remained on the basketball court together after the crimes. [Trial Transcript] at 170–71, 174, 176, 194, 195, 198, 220, 222, 226, 248, 261. Eyewitness Dujuan Harrison, who identified Porter but did not identify Petitioner, testified that the second man—who arrived at the same time as Porter and also carried a gun—stood off to the side and stayed on the basketball court as Porter shot, kicked and robbed Mason. *Id.* at 247, 251–51.

> This Court finds that the evidence sufficiently supports the jury's conclusion that petitioner was Porter's accomplice. The Court also finds that the appellate court would [have] affirmed Petitioner's convictions based on accomplice liability had appellate counsel raised this specific argument on direct appeal. Consequently, the Court finds that petitioner cannot show that appellate counsel performed deficiently for failing to raise a non-meritorious issue when she raised five issues supported by the record and prevailed on one issue. The Court also finds that Petitioner has failed to satisfy his burden of proving that he was prejudiced by counsel's performance because Petitioner would not have prevailed on this claim.

*Id.* at 124.

We agree with the post-conviction court's conclusion that Emerson's appellate counsel was not deficient. As we have stated, in reviewing a claim of ineffective assistance of appellate counsel, we should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made. *See Bieghler,* 690 N.E.2d at 194 (emphasis added). Here, Emerson's appellate counsel did not have the decision in *Porter* available to her when she filed her brief on direct appeal. Indeed, appellate counsel filed her brief approximately seven months before the supreme court decided *Porter.* And our review of the transcript shows that trial counsel spent significant time on cross-examinations pointing out discrepancies and conflicts in various witness' descriptions and identifications of Emerson. Stated differently, our review of the record shows that one of the defense theories at trial was that this was a case of mistaken identity and that Emerson was not present at the park on the night in question. Consequently, appellate counsel made a strategic decision to present a set of arguments on direct appeal that related to Emerson's identity as the person who was with Porter in the park. *See Emerson,* 724 N.E.2d at 607 (issues Emerson raised on direct appeal included jury instruction regarding identification, in-court identification by eyewitness, sufficient evidence of identity). Given the state of the record and the

available precedent, we cannot conclude that appellate counsel was deficient when she made a reasonable strategic decision to attack the sufficiency of the evidence regarding identity and did not challenge the sufficiency of the evidence to prove that Emerson and Porter acted in concert. *See Bieghler*, 690 N.E.2d at 194.

In addition to our determination that appellate counsel's actions amount to reasonable appellate strategy, a review of the pages of the transcript cited in the post-conviction court's conclusions shows that the sufficiency claim Emerson contends his counsel should have raised was not a "significant and obvious" issue for appeal. *See id.* Two eyewitnesses at Emerson's trial testified that they saw "two dudes" walk out onto the basketball court. Volume I of Exhibits at 220; Volume II of Exhibits at 247. When asked to explain the events of July 31, 1996, Anthony Robinson testified: "Well we was playing basketball and all of a sudden two dudes ran out on the court and one of them put a gun on me and held it to my chest and robbed me of the necklace that I had." Volume I of Exhibits at 220. Robinson testified further that Emerson was the person who had stolen his necklace. In addition, he stated that once he had removed his necklace to give to Emerson, he heard a gunshot. He then turned, saw Mason lying on the ground, and observed Porter trying to take Mason's gold necklace.

In response to a similar question about the night's events, Dujuan Harrison stated:

> Well that night we was playing basketball and two dudes came up on the court. One came underneath the basket and the other was on the side and one of them had a shiny chrome and the other one had like a black .38 and they told us like to everybody to stop on the court, quit playing basketball.

Volume II of Exhibits at 247. Further, Harrison testified that after Porter shot Mason, Emerson was the only person who remained standing on the basketball court. That testimony corroborated Mark Garrett's statements that as he was driving away from the park after the shooting, he looked back at the court and saw Emerson, Porter and another man standing together.[3]

Taken together, we conclude that the evidence supports a conclusion that Emerson and Porter acted together. *Cf. Porter*, 715 N.E.2d at 871 (determining there was no evidence to establish that defendants had arrived at the basketball court at the same time, that they had arrived together, or that they had left together). We agree with our supreme court's statement in its Order on Rehearing that "the evidence in Emerson's trial better supports affirming the convictions on the basis of accomplice liability because it tends to establish that Porter and Emerson actually arrived at the basketball court together." Appellant's App. at 100–01. Accordingly, Emerson has not shown that the unraised issue is significant and obvious from the record, and he has not demonstrated that the post-conviction court clearly erred when it concluded that his appellate counsel was not ineffective. *See Bieghler*, 690 N.E.2d at 194.

### Issue Two: Stare Decisis

Emerson also asserts that his murder conviction warrants reversal under the doctrine of stare decisis. As the State points out, Emerson failed to raise that argument in either his original petition for post-conviction relief or his amended petition. And during the post-conviction hearing, Emerson's counsel argued only that the doctrine of inconsistent verdicts should apply to Emerson's case. Issues not raised in a petition for post-conviction re-

3. Garrett testified that there were three men involved in the robberies and shooting.

lief may not be raised for the first time on appeal. *See Koons v. State,* 771 N.E.2d 685, 691 (Ind.Ct.App.2002), *trans. denied.* The failure to raise an alleged error in the petition waives the right to raise that issue on appeal. *Id.* Because Emerson failed to raise his stare decisis argument to the post-conviction court, the argument is waived.

 Waiver notwithstanding, stare decisis does not apply here. The doctrine of stare decisis states that, when a court has once laid down a principle of law as applicable to a certain set of facts, it will adhere to that principle and apply it to all future cases where the facts are substantially the same. *See State v. Mileff,* 520 N.E.2d 123, 126 (Ind.Ct.App.1988) (citing BLACK'S LAW DICTIONARY 1577 (4th Rev. Ed.1968)). In *Porter,* the court determined that, based on the evidence presented at Porter's trial, the State failed to present sufficient evidence that Porter and Emerson had acted in concert or by agreement. Here, Emerson argues that his appellate counsel was ineffective. Further, as the court noted in its Order on Rehearing, the State tried Emerson and Porter separately, and the evidence in Emerson's case was different from the evidence in Porter's. In the end, contrary to Emerson's contentions, the holding in *Porter* regarding the sufficiency of the evidence in that case does not dictate the outcome of his ineffective assistance of appellate counsel claim.[4]

Affirmed.

KIRSCH, C.J., and RILEY, J., concur.

---

4. Emerson mentions the doctrine of mandated consistency, but acknowledges that doctrine was abolished when our legislature enacted the accomplice liability statute. *See* *Sanquenetti v. State,* 727 N.E.2d 437, 441 (Ind.2000). Thus, any suggestion that Emerson is entitled to relief under that doctrine is not well taken.