## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 10 2019, 9:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

David Lewicki
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Lewicki,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

July 10, 2019

Court of Appeals Case No.
18A-PC-2356

Appeal from the
Madison Circuit Court

The Honorable
Mark Dudley, Judge

Trial Court Cause No.
48C06-1602-PC-8

**Kirsch, Judge.**

[1] David Lewicki ("Lewicki") appeals the denial of his petition for post-conviction relief raising the following restated issues for our review:

I. Whether Lewicki received ineffective assistance of counsel at the trial and appellate level;

II. Whether Lewicki should be granted relief due to newly discovered evidence; and

III. Whether Lewicki's habitual offender enhancement should be vacated.

We affirm.

## Facts and Procedural History

The facts relating to Lewicki's conviction as written in an unpublished decision from his direct appeal are the following:

> Very late on the evening of December 5, 2011, Lewicki, his girlfriend Brittany Wellman, his friend Steven Browning, and Browning's girlfriend Jennifer Sprinkle, needed gas money and devised a plan to get some from Humberto Pelayo, an acquaintance of Wellman. Lewicki drove the group to Pelayo's trailer in Elwood, where the women lured him to the car with the ruse that they were going to buy marijuana. Browning, who was agitated that Pelayo had sex with Sprinkle in the trailer before leaving, told Lewicki that they would tell Pelayo about buying marijuana, but would instead drive him to a remote spot in the country and leave him stranded after stealing his money.
>
> Following Browning's directions, Lewicki drove the group to a pig farm and parked between a shed and the residence. After Lewicki ordered the frightened Pelayo out of the car, Browning and Sprinkle began to beat the victim. Browning was hitting Pelayo in the head with a machete Lewicki had previously seen in the car when Lewicki approached and grabbed Pelayo's hand

demanding all of his money. At that point, Lewicki received a deep cut to his forearm, which began bleeding heavily. He retreated to the car.

Despite Pelayo's severe injuries including large gashes to his scalp, he walked to a residence to ask for help, leaving a significant amount of blood on the porch and doorbell, but no one answered. A passerby telephoned for help after seeing Pelayo along the roadway.

The four perpetrators sped away with Wellman at the wheel. As she drove the group to St. Vincent Mercy Hospital, Browning and Sprinkle came up with stories Lewicki could use to explain his injury. Around 2 a.m., Elwood Police Detective Nicholas Oldham was leaving the hospital on an unrelated matter when he encountered Wellman and Lewicki in the parking lot. Asked what happened, Lewicki claimed he did not remember, and Wellman said Lewicki had been in a fight in the country and been robbed. Lewicki's story later changed when he told Madison County Sheriff's Deputy Juan Galan that while driving down a country road with Wellman they encountered two men fighting and Lewicki was injured trying to stop the fight.

At that point officers considered Lewicki a victim and the three others witnesses. They interviewed Browning and Sprinkle. All four stories conflicted. Browning's and Sprinkle's clothing was stained with blood and dirt, and their hands showed blood and abrasions.

Meanwhile, responding to a dispatch, two officers encountered Pelayo walking along the roadside, with deep lacerations to his scalp and the hood of his jacket saturated in blood. His money was still in an interior pocket of his jacket. Transported to St. Vincent Mercy, Pelayo told Deputy Galan that a girl he knew had asked him for money, that he had left with her and others,

after which he was grabbed by the throat and attacked with a knife. Pelayo recalled seeing the image of a pig on the side of a building during the attack.

Gary Davis, who owned the residence Pelayo had approached seeking help, called in to report the blood on his porch. When officers responded to Davis's residence and the spot where Pelayo was found, they managed to locate the building at the pig farm where Pelayo was attacked. Officers recovered Pelayo's shoes and hat, and Sprinkle's purse in the grass. Despite rainy conditions, the gravel driveway showed fresh tire tracks.

As Lewicki's deep laceration was being sutured, the doctor was notified that a patient with severe head trauma had been admitted. Lewicki, who until that point had been reluctant to explain his injury to the doctor and was generally uncommunicative, immediately became interested in the new patient, repeatedly inquiring if he was "still alive." *Tr.* at 450. Lewicki was initially given a low dose of Morphine and later a low dose of Dilaudid because he was still in pain. Lewicki did not display any adverse reactions to the medication and spoke clearly with his doctor.

Pelayo suffered three very large lacerations to his scalp, bleeding on his brain, a dislocated right shoulder, and a punch-like laceration to his left groin. His depressed skull fracture was indicative of a brain injury. He continues to experience a lot of head pain and sometimes has difficulty thinking clearly.

Police searched Sprinkle's vehicle after obtaining her consent. They found the machete on the front passenger floorboard where Browning had been seated on the way to the hospital. A smaller green-handled folding knife, with its blade extended, was located in the back seat where Lewicki had sat. Cell phones owned by Sprinkle, Browning, and Wellman were located in the car;

Pelayo's cell phone was found in Sprinkle's possession. DNA testing of various items, including the machete, the smaller knife, Browning's clothing, and Lewicki's clothing, revealed evidence connecting Pelayo with Browning and Lewicki.

After Lewicki was discharged from the hospital, he was transported to the Elwood Police Department, where he waived his Miranda rights and gave a recorded statement admitting he knew of the plan to rob Pelayo. The State charged Lewicki with attempted robbery causing serious bodily injury, attempted robbery using a deadly weapon, and being an habitual offender. A jury found Lewicki guilty as charged, and the court imposed an aggregate sentence of sixty-five years.

*Lewicki v. State*, No. 48A04-1501-CR-30, *1-*2 (Ind. Ct. App. Nov. 4, 2015).

[4] On direct appeal, Lewicki raised the issues of ineffective assistance of trial counsel, evidentiary rulings, and incorrect jury instructions. *Id.* *3-*4. We denied relief on all claims.

[5] Lewicki filed a petition for post-conviction relief on February 12, 2016, and the trial court heard the petition on June 26, 2017. *Appellant's App. Vol. II* at 41; *Tr.* at 2. On August 13, 2018, the post-conviction court issued its findings of facts and conclusions of law, denying relief in part and granting relief in part. *Appellant's App. Vol. IV* at 224. It denied relief on Lewicki's contention that appellate counsel was ineffective. However, finding that Lewicki's second conviction of robbery, as a Level B felony, violated the prohibition on double jeopardy, it vacated that conviction. Lewicki now appeals the post-conviction court's partial denial of his petition.

# Discussion and Decision

Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal. Rather, they provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied*, 534 U.S. 1164 (2002); *Wieland v. State,* 848 N.E.2d 679, 681 (Ind. Ct. App. 2006), *trans. denied*, *cert. denied*, 549 U.S. 1038 (2006). The proceedings do not substitute for a direct appeal and provide only a narrow remedy for a subsequent collateral challenges to convictions. *Ben-Yisrayl*, 738 N.E.2d at 358. The post-conviction petitioner bears the burden of proving the grounds by a preponderance of the evidence. Ind. Post-Conviction Rule1(5). Issues not raised on direct appeal are barred from being raised in post-conviction proceedings. *Bunch v. State*, 778 N.E.2d 1285, 1289 (Ind. 2002).

When a petitioner appeals the denial of post-conviction relief, he appeals a negative judgment. *Fisher v. State*, 878 N.E.2d 457, 463 (Ind. Ct. App. 2007), *trans. denied.* The petitioner must establish that the evidence as a whole leads to a conclusion contrary to that of the post-conviction court. *Id.* We will disturb a post-conviction court's decision as contrary to law only where the evidence is without conflict, leads to but one conclusion, and the post-conviction has reached the opposite conclusion. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *trans. denied.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied.* We accept the post-

conviction court's findings of fact unless they are clearly erroneous, but we do not defer to its conclusions of law. *Fisher*, 878 N.E.2d at 463.

# I. Ineffective Assistance of Appellate Counsel

[8] When evaluating a claim of ineffective assistance of counsel, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Perry v. State*, 904 N.E.2d 302, 308 (Ind. Ct. App. 2009) (citing *Pinkins v. State*, 799 N.E.2d 1079, 1093 (Ind. Ct. App. 2003), *trans. denied*), *trans. denied*. First, the petitioner must show that counsel's performance was deficient. *Id.* This requires a showing that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed by the Sixth and Fourteenth Amendments. *Id.* Second, the petitioner must show that the deficient performance resulted in prejudice. *Id.* To establish prejudice, a petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The two prongs of the *Strickland* test are separate and independent inquiries. *Manzano v. State*, 12 N.E.3d 321, 325 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied*, 135 S. Ct. 2376 (2015). "Thus, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Id.* (quoting *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *cert. denied*, 537 U.S. 243 (1998)).

[9] Counsel's performance is presumed effective. The petitioner must offer strong and convincing evidence to overcome this presumption. *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). We will not speculate as to what may or may not have been an advantageous trial strategy, as counsel should be given deference in choosing a trial strategy that, at the time and under the circumstances, seemed best. *Perry*, 904 N.E.2d at 308 (citing *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998)). Isolated omissions or errors, poor strategy, or bad tactics do not necessarily render representation ineffective. *Shanabarger v. State*, 846 N.E.2d 702, 708 (Ind. Ct. App. 2006), *trans. denied*.

[10] There are three recognized categories of appellate counsel ineffectiveness: "(1) denying access to an appeal; (2) failing to raise issues; and (3) failing to present issues completely." *Timberlake*, 753 N.E.2d at 604. "The post-conviction court must conclude that appellate counsel's performance was deficient and that, but for the deficiency of appellate counsel, trial counsel's performance would have been found deficient and prejudicial." *Id*. It was Lewicki's burden to prove both elements of ineffective assistance of counsel concerning both the trial and appellate counsel in post-conviction court. *Id.*

[11] Lewicki first argues[1] that his appellate counsel was ineffective for failing to argue that trial counsel should have raised issues concerning his Sixth

---

[1] On appeal, Lewicki also argues that his trial counsel was ineffective. However, the issue of ineffective trial counsel was raised on direct appeal. Issues raised on direct appeal are foreclosed from being raised again in post-conviction proceedings. *Jewell v. State*, 887 N.E.2d 939, 942 (Ind. 2008). Therefore, we will not address that issue.

Amendment right to a speedy trial. *Appellant's Br.* at 27. Pursuant to Criminal Rule 4(B), "[A] defendant held in jail on an indictment or an affidavit shall move for an early trial . . . " Ind. Crim. R. 4. A defendant who does not object to a trial being held outside the one-year requirement has waived his right to discharge. *Diederich v. State*, 702 N.E.2d 1074, 1074 (Ind. 1998). Here, Lewicki never filed a motion for a speedy trial. *Appellant's App. Vol. IV* at 221. Because he failed to do so, his claim was waived. Lewicki's trial was continued, but it is not clear as to whether this was the result of court congestion or at Lewicki's counsel's request. *Id.* No matter the reason, Lewicki did not object to the continued trial date that was set outside of the one-year limit stated in Criminal Rule 4(C). *Id.* Because Lewicki did not object to his trial being set outside the one-year requirement, he waived his right to discharge.

[12] Lewicki also claims that his appellate counsel was ineffective because counsel did not raise issues of prosecutorial misconduct, evidentiary rulings, and jury instructions. *Appellant's Br.* at 25, 37, 43-44. Claims that have been previously raised and rejected are precluded by the *res judicata* doctrine. *Wallace v. State*, 820 N.E.2d 1261, 1263 (Ind. 2005). Here, Lewicki's appellate counsel raised issues of prosecutorial misconduct, evidence admitted at trial, and jury instructions on direct appeal. *Appellant's App. Vol. IV* at 222. Because these issues were raised and decided on direct appeal, Lewicki is barred from raising them again in his post-conviction petition.

[13] Finally, Lewicki argues that his appellate counsel was ineffective for failing to raise the issue of consecutive habitual offender enhancements. *Appellant's Br.* at

42.   The post-conviction court noted that one of Lewicki's habitual offender enhancements was previously vacated and he no longer faces consecutive enhancements. *Appellant's App. Vol. IV* at 222-23.  As a result, consecutive habitual offender enhancements were not at issue.

[14]   In addition to his failure to demonstrate that his appellate counsel was ineffective, Lewicki would not be able to show prejudice.  A court will not find deficient performance if some of counsel's decisions to raise certain issues instead of others were reasonable "in light of the facts of the case and precedent available to counsel when that choice was made." *Lewis v. State*, 116 N.E.3d 1144, 1160 (quoting *Bieghler*, 690 N.E.2d at 194).  Here, Lewicki's appellate counsel testified at the post-conviction petition hearing that in his years of experience, the "shotgun approach" does not typically succeed. *Tr.* at 38.  He stated that raising every issue on appeal is not likely to succeed and that he narrows the issues raised on appeal to the ones most likely to win. *Id.* Lewicki's appellate counsel's strategy did not fall below an objective standard of reasonableness and Lewicki has failed to show that the decisions of his appellate counsel would have resulted in a different outcome and has failed to demonstrate ineffective assistance of appellate counsel.[2]

---

[2] Lewicki additionally argues that his appellate counsel was ineffective for failing to raise issues concerning amendments to the charging information and double jeopardy.  However, Lewicki's second charge of robbery, a Level B felony, was vacated by the post-conviction court. *Appellant's App. Vol. IV* at 224. Therefore, there is no need to address either of these issues as Lewicki has already obtained the relief requested.

## II.    Newly Discovered Evidence

[15]    Newly discovered evidence mandates a new trial when a defendant demonstrates that: (1) the evidence has been discovered since trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) it is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at trial. *Whedon v. State*, 900 N.E.2d 498, 504 (Ind. Ct. App. 2009). "We 'analyze[ ] these nine factors with care, as the basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized.'" *Id.* (quoting *Taylor*, 840 N.E.2d 324, 330). The petitioner for post-conviction relief bears the burden of showing that *all* nine requirements are met. *Id.* (emphasis in original).

[16]    Lewicki argues that evidence from a cell phone constituted newly discovered evidence which would have led to facts more favorable to the defense and would have resulted in a different outcome at trial. *Appellant's Br.* at 47-48. Lewicki specifically argues that the evidence from the cell phone, including pictures and text messages, would have shown communications and a relationship between the victim, Pelayo, and co-defendant Jennifer Sprinkle ("Sprinkle"). *Id.* Lewicki argues that this evidence could have been used to impeach the victim.

The State argues that Lewicki has waived this argument because Lewicki did not present this issue to the post-conviction court and is now raising it for the first time on appeal. We agree. "Issues not raised in a petition for post-conviction relief many not be raised for the first time on appeal." *Emerson v. State*, 812 N.E.2d 1090, 1098-99 (Ind. Ct. App. 2004). "The failure to raise an alleged error in the petition waives the right to raise the issues on appeal." *Id.* at 1099. Lewicki failed to raise the issue of newly discovered evidence in his petition to the post-conviction court and raises it for the first time on appeal. Because Lewicki failed to raise the issue in his original petition, he has waived his right to raise the issue now.

Nevertheless, even if Lewicki had raised the issue of newly discovered evidence at the post-conviction court, his argument would fail. Lewicki concedes that the communications between co-defendant Sprinkle and the victim would merely be for impeaching purposes. Lewicki's "new" evidence is solely for impeaching a witness, and this does not meet the standards for newly discovered evidence as articulated in *Whedon*. *Whedon*, 900 N.E.2d at 504. Lewicki is not entitled to a new trial on the basis of newly discovered evidence.

## III. Habitual Offender Enhancement

Finally, Lewicki contends that his habitual offender enhancement was improper. His claim fails for two reasons. First, Lewicki has failed to cite to any authority as to why his habitual offender enhancement should be vacated. When a party does not support their argument with cogent reasoning or legal

authority, they waive their argument. *Burnell v. State*, 110 N.E.3d 1167, 1172-73 (Ind. Ct. App. 2018). Here, Lewicki has failed to adequately support his argument that his habitual offender enhancement should be vacated with any legal authority or cogent reasoning as required under Appellate Rule 46(A)(8)(a). The second reason why Lewicki cannot succeed on his claim is because he failed to raise it to the post-conviction court. An issue that was not raised in the petition for post-conviction relief cannot be raised on appeal. *Emerson*, 812 N.E.2d at 1098-99. Lewicki has waived his argument as to this third issue.

[20] The findings of the post-conviction court are not clearly erroneous, and the court did not err in its partial denial of Lewicki's petition.

[21] Affirmed.

Vaidik, C.J., and Altice, J., concur.